# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 2:18CR00003 |
| v. | **OPINION AND ORDER** |
| **ROY LEE DYKES, ET AL.,** | By: James P. Jones |
| Defendants. | United States District Judge |

*Kari K. Munro, Assistant United States Attorney, M. Suzanne Kerney-Quillen, Special Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Abingdon, Virginia, for the United States; Melvin L. Hill, MELVIN L. HILL, P.C., Roanoke, Virginia, for Defendant Roy Lee Dykes; Jay H. Steele, Lebanon, Virginia, for Defendant Leila Varretta Hector.*

The defendants, Roy Lee Dykes and Leila Varretta Hector, have each filed a Motion for New Trial based on alleged unfairly prejudicial testimony by a law enforcement witness during cross-examination. I previously denied the defendants' oral Motion for Mistrial as to this issue and I similarly find that the defendants are not entitled to a new trial.

I.

After a five-day jury trial, the defendants were convicted of conspiracy to distribute or possession with intent to distribute controlled substances. Hector was convicted of one count of distributing or possessing with intent to distribute 50

grams or more of methamphetamine. Dykes was convicted of one count of distributing or possessing with intent to distribute various controlled substances, as well as seventeen counts of distributing or possessing with intent to distribute methamphetamine, heroin, cocaine, oxycodone, and alprazolam.

On the third day of trial, the government called William Corey Duke, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), to testify in its case-in-chief. Duke's testimony during direct examination focused on his surveillance of the defendants prior to their arrests, his role in arresting Dykes, and his pre-arrest interview of Hector.

During cross-examination, Hector's counsel asked Duke whether Hector had admitted knowledge of Dykes' drug trafficking activity during her interview. Trial Tr. 24, ECF No. 625. Duke answered as follows:

> No, she did not. She just said that she knows he did things and that she was attracted to him because he'd been in prison before and was kind of a bad guy. But that as far as specific knowledge of this activity, she just said that she tried to mind her own business.

*Id.*

Although neither Dykes' nor Hector's attorney objected to Duke's answer, I promptly instructed the jury,

> Ladies and gentlemen, I think the question was asked, what — she never admitted knowledge of what her husband did. And the agent answered that and [s]he said no. Then he went on to say something, certain other things. I want you to disregard those. Those don't have

anything to do with this case. Put them out of your mind. They were
not asked and they're irrelevant to the issues in this case.

*Id.* at 24–25.

Following the conclusion of Duke's testimony, outside of the presence of the jury, both defendants orally moved for a mistrial based on Duke's statement indicating that Dykes had been in prison and was a "bad boy," a characteristic that Hector admired. The government responded that the court's curative instruction was sufficient to address any potential undue prejudice. The government also asserted that Duke's testimony was not prejudicial because Dykes had forecasted his intent to testify in his counsel's opening statement, and the government planned to impeach him with his criminal history. I denied the Motions for Mistrial, and I stated on the record that my immediate curative instruction was sufficient to mitigate the potential prejudice. I also noted that Duke's statement was not elicited by government counsel.

Dykes later did testify in his own defense and was impeached by the government with his extensive criminal record. Hector did not testify. At the close of the trial, I issued the following additional admonishment during my instructions to the jury:

> When I sustained an objection to a question the witness was not allowed to answer it. Do not attempt to guess what answer might have been given had I allowed the question to be answered. *Similarly, when I told you not to consider a particular statement, you were told to put that*

> *statement out of your mind, and you may not refer to that statement in your deliberations.*

Final Jury Instr. No. 1, ECF No. 571 (emphasis added).

In their respective Motions for New Trial, the defendants reassert that Duke's nonresponsive answer during cross-examination was unduly prejudicial and improperly influenced the jury to convict them.

In opposition, the government argues that it had planned to present Dykes' past convictions as impeachment evidence during its cross-examination of him pursuant to Rule 609 of the Federal Rules of Evidence, and the government had notified him of its intention to do so if he testified at trial. The government also contends that Duke's response occurred during cross-examination by Hector rather than being improperly elicited by the government during its direct examination. The government also emphasizes that there was overwhelming evidence presented of the defendants' guilt, lessening the likelihood of prejudice. Finally, the government maintains that my immediate curative instruction after the agent's testimony was enough to cure any potential undue prejudice.[1]

---

[1] The recorded interview of Hector by agent Duke was introduced into evidence by the government during his testimony without objection by the defendants, Trial Tr. 11, ECF No. 625, but was never played by the government to the jury, either in whole or in part. The recording, which lasts in total one hour and 35 minutes, contains Hector's statement at issue, just as Duke related it at trial. Ex. No. 113, 16:58–17:16. The government argues that since there was no objection to the introduction of the recording, any objection to Duke's statement was waived. However, under the circumstances, I am not disposed to rely upon a waiver. There is no evidence that the jury actually listened to the recording.

II.

Under Rule 33 of the Federal Rules of Criminal Procedure, the court may grant a defendant's motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Fourth Circuit has held that "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence weighs heavily against it." *United States v. Smith*, 451 F.3d 209, 217 (4th Cir. 2006) (internal quotation marks and citation omitted). I find that an evidentiary hearing is not necessary to determine the pending motions, as I am familiar with the trial evidence and the grounds the defendants are asserting for a new trial. *United States v. Greene*, 581 F. App'x 280, 282 (4th Cir. 2014) (unpublished).

The Fourth Circuit has set out four factors that courts must consider when evaluating the prejudicial effect of an inadmissible statement. *United States v. Mitchell*, 1 F.3d 235, 241 (4th Cir. 1993). These include: (1) The degree to which the statement has a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. *Id*.

As for the first factor, I find that Duke's improper answer had little tendency to mislead the jury and was not unduly prejudicial. Dykes' criminal record was later introduced to the jury during his cross-examination as impeachment evidence. The agent clearly stated that Hector denied knowing of her husband's criminal activities. The fact that he had been in prison was connected to her attraction to him as a "bad boy" rather than by any current criminal conduct.

As for the second factor, I find that Duke's reference to Hector's statements was fleeting and isolated to a single occurrence. *See United States v. Allen*, No. 92-5807, 1993 WL 475968, at *1 (4th Cir. 1993) (unpublished) (upholding denial of defendant's motion for mistrial because witness's reference to the defendant's prior incarceration came up only incidentally, and finding that a new trial was not necessary). In the mistrial context, the Fourth Circuit recently reaffirmed that a stray reference to a defendant's prior incarceration does "not amount to prejudicial testimony requiring a mistrial." *United States v. Smith*, 919 F.3d 825, 841 n. 12 (4th Cir. 2019). Duke's answer only vaguely referred to Dykes' criminal record and did not detail the extent or nature of his record; he merely repeated Hector's statement that she knew Dykes had been to prison at some point.

As for the third factor, the government presented voluminous evidence supporting the jury's verdict that included numerous witnesses and hundreds of exhibits relating to Dykes' and Hector's criminal activity. *United States v. Morrow*,

731 F.2d 233, 235 n. 4 (4th Cir. 1984) (holding that codefendant's reference to defendant's prior incarceration did not require a mistrial due to the "abundant and cumulative evidence" against the defendant). The evidence consisted of numerous video and audio recordings of undercover drug deals with Dykes, a cooperating defendant's testimony as to the contours of the conspiracy, law enforcement testimony detailing defendant interviews and searches, firearms and narcotics seized from the defendants, and incriminating statements made by Dykes and Hector during their respective interviews with law enforcement.

With respect to the fourth factor, Duke's statement occurred during cross-examination rather than direct examination by the government. While the agent was not asked a question that logically would have led to his statement at issue, it was not far afield from it, in that it involved Hector's statement to the agent denying her knowledge of Dykes' drug dealing. I find that it was not deliberately elicited to be put before the jury and to distract it from the current criminal allegations. *See Allen*, 1993 WL 475968, at *1 (explaining that "[t]his is not a case where the Government improperly attempted to put the matter before the jury or where repeated mention of the previous incarceration nor other misconduct occurred") (citation omitted).

Finally, I find that my immediate curative instruction and general instruction to the jury were sufficient to negate any potential prejudice. *See United States v. Johnson*, 610 F.2d 194, 196 (4th Cir. 1979) (finding that the prosecution had "solidly

proved its case" and the strong curative instruction given by the trial judge was sufficient); *United States v. Jackson*, 585 F.2d 653, 663 (4th Cir. 1978) (holding that even where the government's witness volunteered an improper statement during cross examination, mistrial was not required after the court's cautionary instruction to the jury); *see also United States v. Burfoot*, 899 F.3d 326, 342 (4th Cir. 2018) (noting that "juries are presumed to follow the judge's instructions").

Based on my consideration of these factors, I conclude that justice does not require a new trial.

III.

For the foregoing reasons, it is **ORDERED** that the defendant's respective Motions for New Trial, ECF No. 586 and ECF No. 588, are DENIED.

ENTER: December 11, 2019

/s/  JAMES P. JONES
United States District Judge